UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SUNNYSIDE DEVELOPMENT COMPANY, LLC,  :

                 Plaintiff,  :

    - against -  :

CHARTIS SPECIALTY INSURANCE COMPANY,  :

               Defendant.  :

------------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 26, 2012
```

10 Civ. 3707 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

This is an insurance coverage dispute in which the insurer has engaged in a series of coast to coast tactics designed to frustrate the performance of its obligation to its insured. Plaintiff Sunnyside Development LLC ("Sunnyside") is a landlord and an additional named insured on a policy issued to its tenant Opsys US Corporation ("Opsys"). Opsys obtained insurance from a predecessor of Defendant Chartis Specialty Insurance Company ("Chartis"). Sunnyside now seeks to enforce against Chartis a default judgment that it obtained in the United States District Court for the Northern District of California (the "California Action"), No. 3:05-cv-01447 (N.D. Cal. Apr. 8, 2010).

Both parties now move for summary judgment, pursuant to Fed. R. Civ. P. 56. For the reasons that follow, Sunnyside's motion is GRANTED as to its second cause of action but otherwise DENIED; and Chartis's motion is GRANTED as to Sunnyside's first cause of action, but otherwise DENIED.

## BACKGROUND

In October 2002, Sunnyside leased property at 47375 Fremont Blvd., Fremont California (the "Property") to Opsys. (Sunnyside 56.1 ¶ 4.) On October 28, 2002, American International

Specialty Lines Insurance Company ("AISLIC")[1] issued a pollution legal liability policy (the

"Policy") to Opsys, the "Insured," to run until October 28, 2005.  (Sunnyside 56.1 ¶¶ 12, 13.)

Sunnyside was named an "Additional Insured" under the Policy.  (Chartis 56.1 ¶ 8.)  The Policy

required Chartis "[t]o pay on behalf of the Insured, Loss that the Insured becomes legally

obligated to pay as the result. . . Property Damage resulting from Pollution Conditions. . . ."

(Chartis 56.1 ¶ 2.)  "Property Damage" included "loss of use"; and "Pollution Conditions" was defined,

inter alia, as "the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal

irritant or contaminant . . . ." (Chartis 56.1 ¶¶ 3, 4.)

     Opsys was engaged in research and development in the organic light emitting diode

industry.  (Sunnyside 56.1 ¶ 8.)  Opsys's work generated hazardous materials.  (Sunnyside 56.1 ¶

9.)  The local Certified Unified Program Agent ("CUPA"), which in this case was the Fremont Fire

Department, regulated facilities such as Opsys that handled hazardous materials and generated

hazardous waste.  (Chartis 56.1 ¶ 9.)

     On May 5, 2003, Opsys filed for Chapter 7 bankruptcy protection with the United States

Bankruptcy Court for the Northern District of California (the "Bankruptcy Action").  (Chartis 56.1

¶ 11.)  The CUPA learned that Opsys was discontinuing its operations (see Cohen Decl. Ex. 4

104:5-7), and conducted an inspection of the Property (Sunnyside 56.1 ¶ 25).  On May 8, 2003,

the CUPA issued a Notice of Violation & Order to Comply based on "a condition dangerous to

human health, property, and the environment by abandoning hazardous materials and hazardous

waste."  (Chartis 56.1 ¶ 13.)  The CUPA Order required that the facility "present proof that no

evidence of contamination at or above the levels of concern remain at the site." (Chartis 56.1 ¶

---

[1] Chartis was formerly known as AISLIC, and AIG Technical Services was its claims adjusting unit
(hereinafter AISLIC and AIG Technical Services will be referred to as "Chartis").  (Sunnyside 56.1 ¶¶
2, 3.)

13.)  As a result of this Order, the Property could not be occupied until a Closure Plan and Closure Report was completed and accepted by the CUPA.  (Sunnyside 56.1 ¶ 28.)

In September 2003, Sunnyside and Opsys each filed a "Notice of Loss/Notice of Claim" with Chartis stemming from environmental "contamination" of the Property.  (Sunnyside 56.1 ¶ 45.)  Sunnyside filed a claim against Opsys in the Bankruptcy Action, and notified Chartis of its claim.  (Sunnyside 56.1 ¶¶ 50, 64.)  On October 6, 2003, Sunnyside notified Chartis that it submitted a claim directly to Chartis relating to the "damage to the building floors, subfloors, walls and ceilings from the release of toxic chemicals" and a "few . . . drum[s] [that] appear to have leaked . . . ." (Sunnyside 56.1 ¶ 51; Chiu Decl. Ex. 7.)  Chartis rejected the claim.  (See e.g., Sunnyside 56.1 ¶ 79.)

In October 2003, a "Closure Plan" describing the process to "remov[e] all hazardous waste" from the Property was submitted to and approved by the CUPA.  (Chartis 56.1 ¶ 15; Cohen Decl. Ex. 8 at 4 (the Closure Plan).)  On June 16, 2004, a "Closure Report" detailing the results of the decontamination process was accepted by the CUPA, and Sunnyside was allowed to re-lease or re-occupy the Property.  (See e.g., Conner Ex. F-1, G (CUPA Closure Report and CUPA Confirmation ).)  A Post-Closure Report specifically noted the contamination caused by the leaking drums.  (Cohen Decl. Ex. 9, at 7 (The Post-Closure Report stated: "Because of the nature of the majority of the chemicals stored (high or low pH), leaks from the storage drums were fairly evident due to spalling on the concrete floor.").)

Under Chartis's Policy, Sunnyside could not bring a claim against Chartis until "the amount of the Insured's obligation to pay . . . ha[s] been finally determined . . . by judgment against the Insured . . . ." (Sunnyside 56.1 ¶ 66.)  On October 22, 2004, the Bankruptcy Court granted Sunnyside's motion for an order permitting it "to pursue collection outside the bankruptcy

3

to obtain insurance benefits under the debtor's insurance policy." In re Opsys U.S. Corporation, No. 03-42660 (Bankr. N.D. Cal. Oct. 22, 2004).  On April 8, 2005, Sunnyside instituted the California Action against Opsys.  (Sunnyside 56.1 ¶ 80.)  On April 18, 2005, Sunnyside filed a first amended complaint in the California Action, raising claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9600 et seq., for negligence, and for public nuisance.  (Chiu Decl. Ex. 17 (the First Amended Complaint).)

On June 24, 2005, Sunnyside notified Chartis that: "[Sunnyside] has sued your insured . . . and are about to file a default.  Do you plan on defending?  If not, we will get a judgment and then file a writ of garnishment under your policy." (Chartis 56.1 ¶ 34.)  There is no record of any response from Chartis.  (See Sunnyside 56.1 ¶¶ 93-95 (Chartis never responded); Chartis Response 56.1  ¶ ¶ 93-95 (Chartis representative does not deny that Chartis received notice but instead says he does not recall whether Chartis responded).)  Chartis did not intervene in the California Action.

On September 30, 2005, the clerk of the court in the California Action issued an entry of default against Opsys.  (Chiu Decl. Ex. 20.)  On April 8, 2010, Judge Patel of the United States District Court for the Northern District of California entered a final default judgment against Opsys for $1,000,000 (the "Default Judgment").  (Chiu Decl. Ex. 23.)

On April 30, 2010, Sunnyside brought the instant action to enforce the Default Judgment against Chartis and collect under Chartis's Policy.  On March 15, 2011, both parties filed motions for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). The Court resolves all ambiguities and draws all factual inferences in favor of the non-movant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

## ANALYSIS

### I. Sunnyside's First Cause of Action[2]

Sunnyside's first cause of action against Chartis is for breach of contract; it claims to be entitled to direct coverage as an Additional Insured under the Policy. There is no dispute that Sunnyside was named as an "Additional Insured" and Opsys was named as the "Insured" or "Named Insured" under the Policy. (Chartis 56.1 ¶¶ 5-8.) Chartis argues, however, that Sunnyside does not qualify for coverage as an Additional Insured under the terms of Chartis's Policy. (Chartis Br. 20-21.) The Policy states that Chartis provides coverage only where the Additional Insured was "named in a suit as a co-defendant with the Named Insured . . . ." (Chartis 56.1 ¶ 8.) Sunnyside has not presented any evidence or made any argument that it has been named in a suit, as defined under California law, as a co-defendant with Opsys. Foster-Gardner, Inc. v. National Union Fire Ins. Co., 959 P.2d 265, 267 (Cal.1998) (holding that an order by an environmental agency is not a "suit"). Rather, Sunnyside concedes that its claim is not likely to succeed. (See Sunnyside Opp. 21 n. 2.) Since Sunnyside has not been named in a suit as a co-defendant with

---

[2] The parties agree that California law governs. (Chartis Br. 5 n.1.)

Opsys, Sunnyside does not qualify for direct coverage as an "Additional Insured" under Chartis's

Policy, and Sunnyside's first cause of action fails.

Accordingly, Chartis's motion for summary judgment on Sunnyside's first cause of action

is GRANTED.

## II.  Sunnyside's Second Cause of Action

Sunnyside's second cause of action seeks to enforce the Default Judgment against Chartis

as a third party creditor.

### A.  Legal Standard

Under California Insurance Code section 11580, "a judgment creditor may proceed

directly against any liability insurance covering the defendant, and obtain satisfaction of the

judgment up to the amount of the policy limits." Reliance Ins. Co. v. Superior Court, 84

Cal.App.4th 383, 386-387 (Cal. Ct. App. 2000).  Since "the insurer may be subject to a direct

action under Insurance Code section 11580 by a judgment creditor who has or will obtain a

default judgment in a third party action against the insured," courts routinely allow the insurer to

"intervene in that action prior to judgment or move under Code of Civil Procedure section 473 to

set aside [any] default judgment [by the insured]." Id.

Where the insurer "fail[s] to intervene in the underlying action or to move to set aside the

default judgment, the insurer is bound," id., as to "all material findings of fact essential to the

judgment of liability [and damages] of the insured." Schaefer/Karpf Prods. v. CNA Ins. Co., 64

Cal.App.4th 1306, 1313 (Cal. Ct. App. 1998) (quoting Geddes & Smith, Inc. v. St. Paul Mercury

Indem. Co., 51 Cal.2d 558, 561 (1959)).

"[O]nce a party has a final judgment against the insured, the claimant becomes a third

party beneficiary of the insurance policy and may enforce the terms which flow to its

benefit . . . ." <u>Great Am. Ins. Co. v. Short</u>, No. E028861, 2001 WL 1264944, at *3-4 (Cal. Ct. App. Oct. 23, 2001) (quoting <u>Harper v. Wausau Ins. Co.</u> 56 Cal.App.4th 1079, 1086 (1997).)  To enforce its judgment against the insured, the third party beneficiary must prove it obtained a judgment "against a person insured under a policy," and "the policy covers the relief awarded in the judgment . . . ." <u>Miller v. Am. Home Assurance Co.</u>, 47 Cal.App.4th 844, 847-848 (Cal. Ct. App. 1996) (quoting <u>Wright v. Fireman's Fund Ins. Co.</u>, 11 Cal.App.4th 998, 1015 (1992)).

There is no dispute that Sunnyside obtained a judgment against Opsys, an insured under Chartis's Policy.  Sunnyside, therefore, has to prove only that "the [P]olicy covers the relief awarded in the judgment . . . ." <u>Miller</u>, 47 Cal.App.4th at 847-848.  Sunnyside argues that the facts established in the California Action and the facts established through this proceeding demonstrate that Chartis's Policy covers the relief awarded in the Default Judgment.  Chartis submits two arguments against affording the relief awarded in the Default Judgment: (1) the loss in the Default Judgment did not *result from* "Pollution Conditions," as defined under its Policy, and thus is not covered by the Policy; and (2) Chartis was not afforded reasonable notice or an opportunity to be heard in the California Action, and therefore the Default Judgment is not constitutionally enforceable against it.

The Court will address Chartis's argument in reverse order.  It will first consider whether Chartis received sufficient notice in the California Action.  If so, the Court will consider the Default Judgment's preclusive effect on the instant suit.

B.  <u>Constitutional Notice</u>

Chartis claims that it was denied its due process right of notice in the California Action. Specifically, Chartis argues that because Sunnyside knew, before it instituted the California Action, that Chartis was the true party in interest, and that Sunnyside intended to enforce any judgment it received against Chartis, that Sunnyside should have provided Chartis with proper notice in the California Action and its failure to do so constitutes a denial of Chartis's due process rights. This argument is rejected.

Notice "must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-315 (1950) (internal citations omitted). In Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 884 (1978), the Supreme Court of California found that an insurer had adequate notice of an underlying wrongful death action against its insured where the insurer (1) knew of the death within a week of its occurrence, (2) was notified by plaintiff's attorney in the wrongful death action "the day before the hearing on default judgment," and (3) "at no time sought to have the default judgment set aside on any ground." The court held that the insurer "knew or should have known that judgment against its insured would form the basis for a later claim against it . . . [and] [i]nstead of protecting itself by means of a section 473 motion [to set aside the judgment,] it chose to remain silent, resting on its claim of noncoverage. Having failed to pursue remedies thus available to it, it cannot now claim prejudice or lack of opportunity to litigate damages." Id. at 886.

Similarly, in Samson v. Transamerica Ins. Co., 30 Cal.3d 220, 238 (1981) the Supreme Court of California held that an insurer which had "actual notice of the accident," its "potential liability," and "the lawsuit although not the trial date" had sufficient notice of the underlying action against its insured, and therefore the court assumed it "chose to stay out of the lawsuit." Id. The

court held that the insured was thus "bound by the result of that lawsuit as fully as if it had participated in it from the start." Id.

In this case, Chartis received ample notice at every stage. Chartis was notified of the pollution conditions in September 2003, when Sunnyside and Opsys each filed "Notice of Loss/Notice of Claim" relating to the environmental "contamination" of the Property, and again in October 2003, in emails from Sunnyside's counsel detailing the contamination. (Sunnyside 56.1 ¶¶ 45-49). Chartis was notified of Sunnyside's bankruptcy claim against Opsys. (Sunnyside 56.1 ¶ 50; see also id. ¶ 64.). On October 6, 2003, Sunnyside notified Chartis that it submitted a claim directly to Chartis, which Chartis later denied. (Sunnyside 56.1 ¶ 51.) On December 30, 2004, Sunnyside wrote to Chartis, "[b]efore we commence litigation," in hopes that Chartis would "reconsider [its] position" on Sunnyside's claim under the Policy. (Sunnyside 56.1 ¶ 78.) On January 25, 2005, Chartis denied Sunnyside's request. (Sunnyside 56.1 ¶ 79.) Chartis was thus on notice of the potential pollution condition and its potential liability.

On April 8, 2005, Sunnyside instituted the California Action against Opsys. (Sunnyside 56.1 ¶ 80.) On June 24, 2005, Sunnyside notified Chartis that: "[Sunnyside] has sued your insured . . . and are about to file a default. Do you plan on defending? If not, we will get a judgment and then file a writ of garnishment under your policy. Please advise as to your intentions." (Chartis 56.1 ¶ 34.) There is no record of any response from Chartis. (See Sunnyside 56.1 ¶¶ 93-95; Chartis Response 56.1 ¶¶ 93-95.) The court in the California Action did not enter a final judgment until April 8, 2010—almost five years after Sunnyside notified Chartis of its lawsuit against Opsys. During this extended period, Chartis never took advantage of the California law which permitted intervention. It could have intervened but it chose not to do so. Given the frequent notice, the extended period of time before the entry of Default

Judgment, the easy availability of intervention, it is preposterous to argue that Chartis did not

receive constitutionally adequate notice.  Chartis's argument that the findings in the California

Action cannot be used against it, are without merit and are rejected.  See Clemmer, 22 Cal.3d at

886; Samson, 30 Cal.3d at 238.

     C.   The Default Judgment Against Opsys In The California Action

Since Chartis had notice of the California Action and "failed to intervene in the underlying

action or to move to set aside the default judgment" Chartis is "bound" as to "all material findings of

fact essential to the judgment of liability [and damages] of the insured."  Reliance Ins. Co. v.

Superior Court, 84 Cal.App.4th 383, 386-87 (6th Dist. 2000); Schaefer/Karpf Prods. v. CNA Ins.

Co., 64 Cal.App.4th 1306, 1313 (Cal. Ct. App. 1998) (quoting Geddes & Smith, Inc. v. St. Paul

Mercury Indem. Co., 51 Cal.2d 558, 561 (1959)).  The facts established in the California Action

are determined by "carefully scrutinize[ing] the pleadings and proof."  Schaefer/Karpf Prods., 64

Cal.App.4th at 1314 (quoting Clark v. Lesher, 46 Cal.2d 874, 880-81 (1956)).

In the California Action, Sunnyside brought claims against Opsys under CERCLA, for

negligence, and for a public nuisance.  In support of its CERCLA claim, Sunnyside alleged that

as of May 2003, Opsys "was storing approximately 600 drums of toxic materials on the Property .

. . . [,] [m]any of these drums ruptured or leaked, causing contamination of the . . . Property."

(Chiu Decl. Ex. 17 ¶ 13 (First Amended Complaint).)  It further alleged Opsys sold equipment to

a third party, who, in the course of removing the equipment, "caused further release of hazardous

materials onto the Property." (Id. ¶ 14.)  For its CERLA claim, Sunnyside alleged that it incurred

response costs in the amount of $132,075.99, which are consistent with cost to "abate the release

of hazardous substances into the environment." (Id. ¶ 25.)  In its negligence claim, Sunnyside

alleged that Opsys "carelessly and negligently stored, handled, transported, and abandoned

hazardous materials on the property." (Id. ¶ 28.) "As a proximate result of the negligence of [Opsys] . . . [Sunnyside] has suffered economic losses due to [Opsys's] polluting activity. . . include[ing] . . . lost rent . . . and damages associated with the stigma to the Property caused from the contamination." (Id. ¶ 30.)  In its public nuisance claim, Sunnyside alleged that the "contamination" of the Property created a public nuisance and that "[a]s a proximate result of the nuisance created by [Opsys] . . . [Sunnyside] has suffered economic losses due to [Opsys's] polluting activities." (Id. ¶¶ 33, 37.)

Neither Chartis nor Opsys responded to Sunnyside's complaint.  As a result on September 30, 2005, the clerk of the court issued an entry of default in the California Action.  (See Chiu Decl. Ex. 20 (Entry of Default).)  At that point, "the well-pleaded factual allegations of the complaint [were] taken as true," which included Sunnyside's well pled allegations of proximate cause.  Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).  Sunnyside was then "required to prove all damages sought in the complaint" id., and the court directed it to do so by submitting "reliable evidence of damages in the amount claimed." (Cohen Decl. Ex. 20)

Sunnyside moved for a final default judgment, claiming that Sunnyside incurred (1) $132,075.99 of "costs of response" in connection with defendant's [Opsys's] release of hazardous substances on the property"; and (2) approximately $1,170,440.63 in "lost rent" as a result of "hazardous material" that was "negligently stored on the property and . . . was leaking out onto the floors and ceilings of the building." (Chiu Decl. Ex. 21, 3-4 (Mem. In Support of Final Judgment).)  Since the bankruptcy court limited Sunnyside's recovery to $1,000,000—the upper limit under the Policy—Sunnyside sought final judgment in this amount.  (Chiu Decl. Ex. 21, 4.) In support of Sunnyside's motion, it submitted a declaration of Frank Chiu which declared, inter

alia: "Opsys was storing approximately 600 drums of toxic material on the Property.  Many of these drums ruptured or leaked, causing contamination of the cement floor, walls and ceiling of the Property." (Chiu Decl. Ex. 22 ¶ 4.)

The court, "reviewed the plaintiff's submissions in support of default judgment and its entitlement to the amount sought, and . . . found that plaintiff established its entitlement" to $1,000,000.  (Chiu Decl. Ex. 23 ("Order Granting Motion for Final Judgment".)

Chartis "is bound as to all [of] the[se] matters addressed in [this] judgment . . . [and] will have to pay if its policy covers the judgment." Delman v. California Farm Ins. Co., No. C030695, 2001 WL 1656583, at *4 (Cal. Ct. App. 2001).

D.  Chartis's Policy Covers Opsys's Liability Under The Default Judgment

This Court turns finally to whether Chartis's Policy covers Opsys's liability under the Default Judgment.  See id.[3]

Chartis's Policy at issue requires Chartis "[t]o pay on behalf of the Insured, Loss that the Insured becomes legally obligated to pay as the result of Claims for . . . Property Damage resulting from Pollution Conditions. . . ." (Chartis 56.1 ¶ 2.) "Property Damage" included "loss of use"; and "Pollution Conditions" was defined, inter alia, as "the discharge, dispersal, release or escape or any solid, liquid, gaseous or thermal irritant or contaminant . . . ." (Chartis 56.1 ¶¶ 3, 4.)

Sunnyside argues that its lost rent, as established in the California Action, qualifies as "loss of use," and thus, as "Property Damage" under Chartis's policy.  See generally, City of Fresno v. Shewmake, 181 Cal.Rptr. 451, 454 (Cal. Ct. App. 1982) ("loss of use damages [can be] measured by loss of rent").  Chartis quibbles that the Default Judgment does not "on its face" identify the "elements of damages that make up the $1,000,000." (Chartis Br. 5.)

---

[3]  Even though the prior action involved a Default Judgment, rather than a contested litigation, the insurer in this action is nonetheless "estopped from denying in a subsequent action any allegations contained in the former complaint." Murray v. Alaska Airlines, Inc., 50 Cal.4th 860, 871 (2010).

Sunnyside alleged that it incurred $132,075.99 of response costs and $1,170,440.63 in lost rent in the California Action. (Chiu Decl. Ex. 21, 3-4.) While the order granting the Default Judgment is brief, the order states the "plaintiff established its entitlement" to . . . . $1,000,000." (Chiu Decl. Ex. 23.) The court's determination that Sunnyside established its lost rent damages is implicit in the court's order. If Sunnyside had not established its lost rent, then the Default Judgment would be $132,075.99 at most. See Gonzalez v. Allstate Ins. Co., No. 00-0350-IEG(AJB), 2000 WL 1375569, at *6 (S.D. Cal. Sept. 13,2000) ("For collateral estoppel to apply, the [the plaintiff] must make a showing that the state court, either explicitly or implicitly, addressed and resolved this issue.") It is clear that Sunnyside's damages under the Default Judgment included lost rent, which constitutes "Property Damage" under the Policy. The Court rejects Chartis's arguments to the contrary.

Chartis then turns to another argument: the California Action does not provide information from which the Court may conclude that Sunnyside's damages resulted from Pollution Conditions, as required under its Policy. (Chartis Br. 5.) Specifically, Chartis argues that it is not clear that Default Judgment was based on a "leak" or "release" of contamination, as opposed to the mere "presence" and "abandonment" of contamination, which led the CUPA to order that the Property be closed. (Chartis Br. 6-10.) This argument is based on wishful thinking; it ignores what happened in the California Action.

Chartis is bound by the determination in the California Action that "drums of toxic materials" "ruptured or leaked, causing contamination of the . . . Property," and there was a "release" of hazardous substances." (See e.g., Chiu Decl. Ex. 17 ¶¶ 13, 24.) Moreover, even if Chartis was not bound by the California Action, there is no dispute that Opsys's drums "leaked" contaminants onto the Property. (Chartis Br. 12 (conceding that the CUPA noticed at some point that Opsys's

drums were leaking); <u>see</u> <u>also</u> Cohen Decl. Ex. 9, 7 (The June 15, 2004 Post-Closure Report stated: "leaks from the storage drums were fairly evident due to spalling on the concrete floor.").) Furthermore, there is no dispute that Chartis previously determined that the leaking drums constituted a "Pollution Condition" under its Policy, and paid related clean-up costs to Opsys. (<u>See</u> Sunnyside 56.1 ¶ 119; Hinckley Decl. Ex. 3 45:3-54:12 (Chartis's Claims handler, Ms. Nadgir, testified that Chartis determined that the spills from the drums constituted a Pollution Condition under the Policy and that Chartis would pay related clean up costs); Hinckley Decl. Ex. 4 108:6-19, 110:5-10 (Chartis's 30(b)(6) witness confirming that a payment was made because "[o]bviously, Ms [Nadgir] was satisfied there was some sort of leakage in the room that qualified as a [P]ollution [C]ondition.").) Stripped to its essentials, Chartis must concede that there was a Pollution Condition, but now contends that the leaking drums did not cause Sunnyside's Property Damage.

> It was established in the California Action that:
>
> As a proximate result of the negligence of [Opsys and its public nuisance]. . . [Sunnyside] suffered economic losses due to defendants' polluting activities. These losses include, but are not limited to, lost rents, costs of removal and remediation, response costs, lost reimbursement of maintenance expense at the Property, and damages associates with the stigma to the Property caused from the contamination.

(<u>See</u> Chiu Decl. 17 ¶¶ 30, 37.)  The Court thus accepts that Sunnyside's Property Damage was caused by Opsys's "polluting activities" and "contamination." It was further established in the California Action that the contamination at issue resulted from Opsys's "drums of toxic material" that "ruptured or leaked, causing contamination. . . ." and other "release[s] of hazardous materials onto the Property." (Chiu Decl. Ex. 17 ¶¶ 13, 14.)  Sunnyside established in the California Action that its lost rent resulted from leaks and releases of contamination.  While Chartis has the right to raise defenses to its Policy coverage, it cannot relitigate facts that were decided in the California

Action.  See Schaefer/Karpf Productions, 64 Cal.App.4th 1306, 1314 (Cal.App. 2 Dist. 1998)

(holding that an insurer is not "estopped from denying coverage [but] it is bound by any material

findings of fact essential to the judgment of liability . . .").  If Chartis wanted to litigate the

proximate cause of Sunnyside's damages, it should have intervened in the California Action or

moved to set aside the Default Judgment.  "It is not unfair that an insurance company is not

entitled to relitigate issues in a second lawsuit that it had the right to litigate in the initial lawsuit.

. . . [because] that potential result will encourage the insurance company to participate in the

initial action."  Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.  136

Cal.App.4th 212, 225 (Cal.App. 3 Dist. 2006).

      Having determined that Default Judgment was awarded based on a "leak" or "release" that

caused Sunnyside's lost rent, the Court can and does find that Sunnyside's Property Damage

resulted from a Pollution Condition, as those terms are defined under Chartis's Policy.  Thus, the

Court finds that Chartis's Policy covers the relief awarded in the Default Judgment.  Accordingly,

the Court GRANTS Sunnyside's motion for summary judgment on its second cause of action and

DENIES Chartis's motion for summary judgment on the same claim.

## CONCLUSION

      For the foregoing reasons, Sunnyside's motion for summary judgment is GRANTED IN

PART and DENIED IN PART, and Chartis's motion for summary judgment is GRANTED IN

PART and DENIED IN PART.  Specifically, the Court GRANTS Chartis's motion for judgment

dismissing Sunnyside's first cause of action and GRANTS Sunnyside's motion for judgment

finding Chartis liable under Sunnyside's second cause of action.

dismissing Sunnyside's first cause of action and GRANTS Sunnyside's motion for judgment

finding Chartis liable under Sunnyside's second cause of action.

The Clerk of Court is directed to enter judgment, against Chartis, on Sunnyside's second

cause of action, in the amount of $1,000,000. The Clerk of Court is further directed to terminate

these motions (Dkt. Nos. 27, 29) and close this matter.

Dated:  New York, New York
        January 26, 2012

                                              SO ORDERED

                                              PAUL A. CROTTY
                                              United States District Judge

16